IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY HANSLOVAN, ) | |
| ) | Case No. CV08-100-S-BLW |
| Plaintiff, ) | |
| vs. ) | |
| ) | **MEMORANDUM DECISION** |
| RANDY BLADES; CORRECTIONAL ) | **AND ORDER** |
| MEDICAL SERVICES; JO-ELLIOTTE ) | |
| BLAKESLEE; DR. KENNEDY; DR. ) | |
| GLASEER; DR. STANDER; JOSH ) | |
| TUCKETT; RACHEL GOETZ; ) | |
| DR. APRIL DAWSON; and ) | |
| NURSE MARK; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Pending before the Court is the CMS Defendants' Motion to Dismiss and/or Motion for Summary Judgment (Docket No. 29). Defendants argue that Plaintiff did not exhaust his administrative remedies. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. D. Id. L. R. 7.1(b).

**A.   Background**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho State Correctional Institution (ISCI). On

**MEMORANDUM DECISION AND ORDER - 1**

October 19, 2006,[1] Plaintiff was assaulted by three other inmates. Plaintiff alleges that he warned correctional staff that he was going to be attacked, but that no action was taken to protect him. As a result of the attack, Plaintiff suffered head trauma and was bleeding from his ear and eye. Plaintiff states that medical staff witnessed the attack but did not come to his aid. Plaintiff alleges that when he was finally taken to the medical unit, he was locked in a room for twelve hours before seeing a doctor. During this time, Plaintiff states that he suffered periods of unconsciousness, blindness, pain, and hearing voices. Complaint (Docket No. 3) at 4.

Defendant Kennedy eventually examined Plaintiff and diagnosed him with severe head trauma, but did not give Plaintiff any medication for his pain. After another three hours, Plaintiff was taken to the emergency room at St. Alphonsus Regional Medical Center, where he was diagnosed with a detached retina. After Plaintiff was taken to Salt Lake Medical Center, a surgeon told Plaintiff that surgery for a detached retina had to be done within eight hours of the injury; the surgeon would not perform the surgery because too much time had passed. Plaintiff has now lost the vision in his right eye. *Id.* at 5.

Plaintiff also alleges that the follow-up care for his injury did not meet

---

[1] There is some question as to when the injury occurred. Plaintiff alleges at one point in his Complaint that the attack happened on October 19, 2007. Complaint (Docket No. 3) at 4. However, at another point in the Complaint, Plaintiff states that some of his follow-up medical care occurred in October of 2006. *Id.* at 5. The CMS Defendants state that their records show the injury occurred on October 19, 2006. Memorandum in Support of Motion to Dismiss and/or for Summary Judgment (Docket No. 29-2) at 5. Based on the foregoing, the Court finds that Plaintiff's attack and subsequent injury took place on October 19, 2006 and that the reference to the year 2007 in Plaintiff's Complaint is an error.

**MEMORANDUM DECISION AND ORDER - 2**

constitutional standards. The medical building was "filthy," and Plaintiff couldn't clean his clothes for the six weeks he was there. Plaintiff also states that he sometimes never received his medication, and when he did it was always late. *Id.* at 6. Plaintiff alleges that he has suffered severe pain, psychological trauma, and loss of vision and that he must now have his right eye removed. Plaintiff brings an Eighth Amendment claim against Defendant Blades that he failed to protect Plaintiff from the attack. Plaintiff also brings an Eighth Amendment claim against the CMS Defendants for failure to provide adequate medical care following his injury.

## B.  Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[2] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The *Jones v. Bock* Court noted that the important policy concern behind requiring exhaustion is that it "allows prison

---

[2] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

**MEMORANDUM DECISION AND ORDER - 3**

officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103.  In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system.  *Id*. at 86-87.  The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2002).  Therefore, the Court will consider Defendants' Motion as a motion to dismiss, rather than a motion for summary judgment.  In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  Defendants bear the burden of proving failure to exhaust.  *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

## C. Grievance Process of the Idaho Department of Correction (IDOC)

The IDOC's grievance process consists of three stages.  First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most directly involved" with the inmate's issue.

**MEMORANDUM DECISION AND ORDER - 4**

Affidavit of Jill Whittington (Docket No. 29-4) ("Whittington Affidavit") at ¶ 5.  If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form.  *Id.* at ¶ 6.

When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally.  Only one issue may be raised in each grievance.  *Id.* at ¶ 7.  When the grievance involves a medical issue, the Grievance Form is "routed through medical staff supervised by a Health Services Administrator, who is employed by the health care contractor."  *Id.* at ¶ 8.  The Health Services Administrator is charged with responding to the grievance.  *Id.*  If the grievance involves a non-medical issue, the reviewing authority is generally the warden of the prison.  *Id.* at ¶ 7.

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision.  In cases of medical grievances, the appellate authority is the Regional Manager or Vice President of the medical contractor.  *Id.* at ¶ 10.  Otherwise, the appellate authority is the warden.  *Id.*  Not until the completion of all three of these steps--Concern Form, Grievance Form, and grievance appeal--is the grievance process exhausted.  *Id.* at ¶ 11.

Plaintiff's injury occurred on October 19, 2006.  Prior to November 2007, the IDOC did not keep records of grievances submitted by inmates if those grievances were not processed for some reason.  Since November 2007, all grievances are logged and recorded, even those that are not processed.  *Id.* at ¶ 13.  Grievances are logged into a

**MEMORANDUM DECISION AND ORDER - 5**

computer database, which is searchable by an inmate's name or IDOC number, or by year. *Id.* at ¶ 12. According to Ms. Whittington, Grievance Coordinator for ISCI, there is no record of any grievance submitted by Plaintiff from October 19, 2006 to the present. *Id.* at ¶ 14.

**D.     Plaintiff did not exhaust his administrative remedies.**

Along with Plaintiff's Complaint, Plaintiff submitted three Offender Concern Forms. Although these Concern Forms are illegible, the Court assumes for the purpose of this decision that the Concern Forms raise the issues of the attack and of Plaintiff's dissatisfaction with his medical care.

However, Plaintiff has not submitted copies of any Grievance Forms or documents showing that he appealed any grievance decision. In fact, Plaintiff has submitted nothing in response to Defendants' Motion to Dismiss. Therefore, there is no evidence that Plaintiff filed any grievance or grievance appeal. There was a period of approximately one year and one month from Plaintiff's injury until the IDOC began logging *all* grievances, processed or not, into the system. However, Plaintiff has not claimed that he filed an unprocessed grievance during that time period. Plaintiff's only allegation regarding the grievance process is his statement in his Complaint that he exhausted his administrative remedies. Complaint (Docket No. 3) at 6. However, this general allegation is insufficient to overcome Defendants' evidence that Plaintiff did not file a grievance. The Court finds that Plaintiff did not file a grievance, processed or otherwise, on the issue of the attack or the issue of his medical care.

**MEMORANDUM DECISION AND ORDER - 6**

Defendants have met their burden of showing that Plaintiff did not exhaust his administrative remedies.  Although Plaintiff may have undertaken the first step of the grievance process--submitting an Offender Concern Form--he did not proceed past the first step.  He did not file a grievance.  Therefore, Plaintiff did not exhaust his administrative remedies, and the Court will dismiss the Complaint without prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Dismiss and/or for Summary Judgment (Docket No. 29) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Complaint (Docket No. 3) is DISMISSED without prejudice.

DATED:  **June 10, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 7**